4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the court is now sitting. God save the United States and this Honorable Court. Seated, please. All right. This morning, we'll start off with the United States versus Santiago and Mr. Rosenberg. I guess we'll hear from you for a minute, right? Right. May it please the court, I'd like to introduce my law student, Christopher Smith, who is a third year student at the West Virginia University College of Law, who will be handling argument today. All right. Very well. Mr. Smith. May it please the court, Mr. Santiago's Sixth Amendment rights were violated by the repeated failures of his counsel. This court should vacate count three of Mr. Santiago's plea agreement for two reasons. First, Mr. Santiago's counsel provided ineffective assistance. You want him to be able to replead the case, pull back his plea agreement altogether, right? No, Your Honor. Mr. Santiago is looking specifically for a vacatur of count three of the plea agreement. Well, how can you have it both ways? I mean, either you vacate the plea agreement and start over, and he can enter into a new plea deal, or he can go to trial. But if he goes to trial, the government may not want to plead if you withdraw your plea agreement, and then you'll be denying the government of the charges in its indictment. Your Honor, in Hairston, this court specifically left open in dicta that certain cases might allow for vacatur of a single plea. Here, where the gun charge doesn't have interplay with the conspiracy charge, it makes sense to vacate only that charge which was affected by the ineffective assistance of counsel. But the government gives up something when it allows you to plead. In other words, when there's a deal, there's ten counts, and you get to plead to two counts, and the government drops eight. And then you say, I want to replead, and I only want the two counts. A little unfair, isn't it? I mean, we're either going to undo the deal and get everybody looking at it again, or not allow the withdrawal of the plea. Your Honor, I believe that, again, where there's so little interplay and where the prejudice is so – How can you say that? Why did the government drop its other – what was the deal? How many counts were there? Your Honor, there were three counts against Mr. Santiago. And how many counts did he plead to? He pleaded to two counts, Your Honor. So the government dropped one, right? Yes, Your Honor. And that was part of the plea deal? Presumably, yes, Your Honor. Well, you can ask for it, I guess. I don't know if you will ask. You certainly can ask for it. But what if you can't get that vacatur of one count? What if it's either start afresh or live with what you got? What's your position? Your Honor, if the – so what's your position? Start afresh, go back, everything withdrawn, go back, you face all those counts again, or keep this plea? Your Honor, the court also has the option to remand count three for an evidentiary. I didn't ask you that. I asked you why do you – given the options of starting fresh or to keep this, what does your client prefer, if you know? Your Honor, having not spoken to Mr. Santiago myself, I can't speak for him in that position. Well, do you want to answer what you would think we should do between those two options, if those are our two options? Your Honor, I would think the vacation would be appropriate in this place, in this – And then – but to do that, wouldn't you have to show that there is an objective component, that that plea would not be accepted by somebody in the place of your client looking at the deal objectively? Don't you have to show that to reach that result? Yes, Your Honor. Why would anybody looking at it objectively agree to go back and face all the charges and the time, really? Wasn't he facing a massive amount of time? Your Honor, he was facing 12 years. Right. And he ended up with how many? Seven? Seven of those years came from count three. Right. So he got a break on the deal. But you think objectively somebody would want – especially under the facts of this case – would want to go back and take a chance on a trial, rather than keeping this plea? Yes, Your Honor. You think a person objectively would do that? I know it is a subjective component, right? And you think your client meets that because he just says it? Yes, Your Honor. What about objectively? Objectively, Your Honor, Mr. Santiago was playing with house money on count three particularly. His sentencing level, assuming the government didn't give him cooperation, was 27. The maximum he could receive under a sentencing guideline range for that particular crime was seven years and three months. The minimum for brandishment, of which Mr. Santiago was not apprised, was seven years. How did he get to life? Your Honor, he could get to life. However, getting to life would require an upward departure. And there's no evidence on the record. According to the guidelines, the mandatory minimum sentence is the guideline sentence, right? Yes, Your Honor. Well, let me get back. What did the government give up in the second count? There were two counts that involved the robbery. One was aiding and abetting and one was conspiracy, right? Yes, Your Honor. So what did the government give up in that count? Count two was the Hobbs Act, which I believe is the actual robbery. I believe count one was conspiracy. Count three was the gun charge in this case. And do you know whether or not those would have been grouped under the guidelines? No, Your Honor, I do not. There are four key undisputed… But those guidelines were just advisory other than the mandatory minimum set, right? The top end is just advisory. Yes, Your Honor, that is true. However, the government, I believe, must justify or the court must justify an upward departure. And here, no upward departure has been asked for. In fact, there's no evidence on the record. There's no upward departure asked for in this case because it was a plea agreement. Yes, Your Honor. However… By the way, I don't understand that point. You think something in this case would prevent the government from asking for an upward departure from the guidelines had it gone to trial? There's nothing that would block them there, is it? No, Your Honor. You effectively blocked them with the plea agreement, didn't you? Yes, Your Honor. Isn't that a benefit? Yes, Your Honor. However, it's a benefit that's derived whenever the government didn't put the brandishment minimum in the plea agreement. And it's a government derived from ineffective assistance from Mr. Santiago's counsel. This isn't the sort of government that the government should hang its hat on because it would gain through… Could he have been convicted of brandishing? Had he gone to trial, he could have been convicted of brandishing, right? Yes, Your Honor. He could have been convicted of brandishing. However, he was not carrying the gun. I know that. No, but I said, could he have been convicted of aiding and abetting the brandishing? Couldn't he? Yes, he could have. And he could have been punished for it? Yes, he could have, Your Honor. Isn't that a benefit that he received from this plea agreement? Yes, Your Honor. However, again, that benefit was received without accurately knowing that the seven-year minimum was what he was facing. I know that, but so he got a gift he didn't know about? That's subjective. What about objectively? A person looking at it would know that objectively, wouldn't they? I mean, isn't the point that this plea protects you from the upward… By the way, you're making a good point about the upward departure. It could have hurt him, maybe pushed him to life. He didn't face that because of the plea agreement. Isn't that a benefit that the objective person would go, that's a nice benefit to get from this plea agreement? Yes, Your Honor. However, again, that was not a benefit that Mr. Santiago received knowingly. In this case… Wait a second. So he got a benefit from it, but he didn't do so knowingly, so he got a gift, and that's a bad thing? Let me scale that back. Gotcha. I'm just asking you. It seems to me he got a great benefit. You say he didn't. No, I think you said he did get a benefit. He didn't knowingly get a benefit. I don't understand what that means. Your Honor, the brandishing minimum is seven years. He was not informed of that minimum in his plea agreement. Effectively, he pled to something with two extra years that he didn't know about. Not knowing about those two years certainly can't be said to… I know, but we have to go back and look at now on trying to withdraw it, whether or not a person would do that subjectively. And he says he would have, so we leave that alone, although maybe that's subject to question. But it's also an objective standard, right? So we have to decide if a person, knowing the facts, would not have taken this deal. And it seems to me that's a very tough burden for you to show. Yes, Your Honor. It is a high burden, but that, coupled with the fact that this gun charge, Mr. Santiago was essentially playing with house money, his guideline range was so close to the maximum of his guideline range. I don't know about playing with house money and somebody that robs somebody. I don't know if we ought to be talking about he's playing with house money. Does that mean he's playing with money that's not his? Yes, Your Honor. We don't want to talk about that, do we, really? No, we don't. You just mean he wasn't at risk, you think? Yes, Your Honor. Well, the guideline range on count one was, what was the top end of the guideline range? Seven years and three months, Your Honor. And so, if he had known there was a mandatory minimum, seven years, would that potentially, from an objective standard, could that have affected his decision to plead guilty? Yes, Your Honor. He had little to lose by going to trial, and especially where Mr. Santiago claims that he would have gone to trial, he didn't know about. In his affidavit, which is uncontested by the government, Mr. Santiago states that he didn't intend to plead to the gun charge, and that his counsel told him the gun charge would have dropped. That wasn't what happened in the case at hand. In looking at whether there is an objective standard, would we also look at the weight of the evidence against him had he gone to trial? Can you repeat the question, Your Honor? Would we look at the weight and the clarity of the evidence against him had he gone to trial? In other words, if it was a certain conviction, apparently, from what the evidence proffered in the record is, 14 witnesses and cameras and all that, do we take that into effect? Yes, Your Honor. Massenburg states that the court should consider the strength of the case against the defendant. Here, the defendant wasn't carrying the gun. The government would be required to show that Mr. Santiago reasonably knew his co-conspirator would have carried the gun, and that's not a sure case based on the record at hand. There are four key undisputed facts in the case at hand. First, as we've discussed at length, there was no mention of the seven-year brandishment. Additionally, the district court did not inform Mr. Santiago of the proper minimum charge of the gun. Pretty clear up until the time of sentencing. At the pre-initial appearance, the plea agreement, and in the Rule 11 proceeding, everybody was assuming a five-year. Yes, Your Honor. And then the pre-sentence report comes out and points out the seven years, right? Yes, Your Honor. That's when the change came. That's when the change came. Additionally, the government doesn't dispute in its brief that Mr. Santiago would have received a similar sentence had he gone to trial on count three. And finally, Mr. Santiago's affidavit remains uncontested. The government had an opportunity during the district court proceedings on the 2055 proceedings to file its own affidavit to request an evidentiary hearing, but it chose not to dispute Mr. Santiago's affidavit. Mr. Santiago's counsel was objectively unreasonable three times during the Rule 11 and sentencing proceedings. First, she informed Mr. Santiago that she intended to get the gun charge dropped. She also didn't inform him of the seven-year brandishing minimum. In United States v. Craig and dicta, this court asserts that bad advice, such as the advice in the case at hand, the uncontested advice, might be enough for objective unreasonableness. However, Mr. Santiago's counsel compounded that objective unreasonableness with her conduct during the Rule 11. You said he wasn't aware of the gun. Under 18 and abetting, didn't he see his brother, whoever, have the rifle? Didn't he see that? Yes, Your Honor, but to clarify, I didn't say that he didn't know about the gun, but it's whether he reasonably knew the gun would have been used in that, and that's the case law. But he knew the gun went in, didn't he? Yes, Your Honor. So he knew the rifle. It was a rifle, was it? Yes, Your Honor. He knew the rifle. Was it his brother? I can't remember. Cousin. His cousin. They were going in to rob. They'd worked out an agreement to rob. The cousin carried a rifle into the store with him and showed it. And so you don't think that objectively that's a pretty easy conviction on abetting the banishment of a firearm? Your Honor, he does have a defense to the jury, which is that he didn't carry the gun. The government still has to prove that he reasonably knew. No, no, no. Nothing that I said said he carried the gun. His co-conspirator or his co-bandit carried the rifle, right? Yes, Your Honor. And so it was in plain view, basically. People could see it. Why wasn't that a very strong case of banishment under aiding and abetting? Why doesn't that make an extraordinarily strong case of brandishing against him? Your Honor, it appears on its face to be a strong case. However, again, the government has to prove that he reasonably knew that the rifle would have been used in the crime. Not used. Brandished. Brandished. The rifle would have been brandished in the case at hand. Under the facts, is there any dispute that the weapon was brandished? No, Your Honor. It was used during the robbery. Okay. Okay. Additionally, during the Rule 11 colloquy, Mr. Santiago's counsel failed to object when the district court first didn't describe the seven-year brandishing minimum, which he was unaware of until that pre-sentence report, as Judge Niemeyer notes, and also whenever the district court told him that the sentence was up to five years. And this misstates the minimum of the gun charge because the minimum is actually five years. Now, in the Lopez case, this court says that failing to object to precedent is objectively unreasonable. Additionally, Mr. Santiago was prejudiced by this decision. In the affidavit, three times in the record, once in the affidavit and twice in briefs that cite to that affidavit, Mr. Santiago says he wouldn't have taken the plea deal if he had known about the extra two years from the gun deal. And additionally, the So you think that meets the subjective component? Yes, Your Honor. The objective component, however, also met because Mr. Santiago, again, was looking at a very similar sentence if he went to trial or if he pled here, unless the government allowed an upward departure. Now, Mr. Santiago's counsel's errors did not end during the trial. Is that true? Did the government have to move to go up on – the judge could go up without a government's departure motion, couldn't he? Yes, Your Honor. So it didn't require a government motion? Yes, Your Honor. Okay. Additionally, Mr. Santiago's counsel provided ineffective assistance during the appellate proceedings. Now, according to the United States v. Robbins, a counsel's performance is objectively unreasonable. There is one issue, one non-frivolous issue that could have won – or not won, that was objectively worth filing. Here, the failure to bring up the seven-year brandishment directly violates Hairston. And Mr. – nevertheless, Mr. Santiago's counsel filed an Anders brief and essentially abandoned her client. If you look to his affidavit at page 73 and 74, you'll see that his client didn't return his calls and he didn't know about the appeal until she told him that he filed – that she had filed an Anders appeal in this case. Okay. I think your red light is on, but you have some time on rebuttal. Okay. And we'll see you back again. All right. Thank you, Your Honor. Mr. Wood. Thank you, Your Honor, and good morning. May it please the Court. Seth Wood on behalf of the United States. The Court, at the outset of the defendant's argument, focused on the prejudice aspect of Strickland. And so I'd like to start my argument there, and specifically the objective component, as Judges Shedd and Niemeyer were discussing. The defendant cannot show that it would have been a rational decision, objectively rational, to plead not guilty to Count 3, but otherwise either plead guilty to Count 1 or fight Count 1, either one. And here's the reason. The plea agreement with the government, as a result of that, the defendant received a three-level reduction for acceptance of responsibility. That three-level reduction took him from a 27 to a 24 in the offense level. The defendant received a bottom-of-the-guideline sentence on Count 1, and that was a 51-month sentence. Bottom-of-the-guideline sentence on Level 27 would have been 70 months. That's a 19-month difference. So there's something to lose by fighting Count 3. And even if the defendant had pleaded guilty to Count 1 and to fought Count 3, he would have endangered his acceptance of responsibility, because he would have to deny relevant conduct associated with Count 1, because the gun is an integral part of the robbery in Count 1 and Count 2. So because of that, the defendant cannot show a rational, that it would be rational to plead not guilty on Count 3. We don't contest that there was an error, a Rule 11 error at the hearing. We don't contest that. We don't contest that. At what hearing? At the Rule 11 hearing, when the district court set up to five years. It started the initial appearance. It's in the plea agreement. It's at the Rule 11 hearing. Right. All right. I understand, Your Honor. And so for us, in discussing the prejudice prong, we obviously went over the plea agreement. There's also the defendant's behavior at the sentencing hearing, which we thought was relevant. We contrasted that behavior with Harrison, what the defendant did there, and how this court in Massenburg talked about Harrison. The defendant, at the outset of the sentencing hearing in this case, said that he had received the plea PSR and that he had a chance to read it over. And the PSR had the correct sentence of seven years for Count 3. In Harrison, the defendant said in his sentencing, Your Honor, I would not have signed a paper for 45 years. He went on to say, I would never have signed for no 45 years. That's not what I was left to understand that I was signing the paper. I'm sorry to interrupt you, but there was some difference in that, in this case, Mr. Santiago was asked at the very beginning of the hearing if he had anything to say. And he responded by saying that I'm going to let my lawyer talk for me. And that was before any objections were lodged. Is that correct? Were spoken to to the court. Is that right? That's right. So, Mr. Santiago here indicates that his lawyer was going to speak to the sentencing issues. I take the court's point on that, and I appreciate that. I will note that in addition to the court asking, do you want to say anything about the report? The defendant replies, just my lawyer here. The court engages him again after one brief interaction and says, do you don't want to say anything about your sentence? You don't have to say anything, but you can speak if you want. And the defendant says, no, sir. I appreciate the distinction that Your Honor's drawing between this decision, this particular allocution opportunity, and maybe the one that occurred in Harrison. But we think it's relevant here. Obviously, on the prejudice prong, the rationality point is probably our strongest argument here at this stage. Well, let me ask you this. You say in your brief several times that he knew from the beginning that he would receive at least five years to life. And is it the United States' position that there's no difference between knowing that you would receive at least five years to life and between knowing that you would receive at least seven years to life, that there's no difference between those two years? No, I can't say that. I would say our point in making that was simply that we were looking at the prealigned case law and what was required then in terms of simply stating, if you're charged with a traditional 924C, the bare minimum is five years. And the seven and ten and 25-year enhancements that can go with that are things that could be found later. That's prealigned. Obviously, post-aligned, it's a different world. And that was the only point we were trying to make. Well, doesn't that make the point? I thought the point to be made was the sentence he received was within the range that he knew at the time he could receive. Right. And that was the key point. I mean, I'm not trying to say that there's no difference, Your Honor, but yes. I mean, he's told – I mean, I don't think that's necessary. I hope you don't think that wins the argument for you. But you're just making the point he didn't receive a sentence that no one could have thought possible for him to receive. It's just he received a sentence he didn't – maybe he didn't want, but it was a sentence within the range the whole time that he knew was a rational person would know was a possibility. Right. Is that not the point of that? Yes. Yes, Your Honor, it is the point of that. Because there's a difference between a defendant facing a sentence within the range but something – I mean, a possible possibility of a sentence that he doesn't want and a defendant's getting a sentence that nobody looking at it at the time of the sentencing thought was even possible. Isn't that right? I would agree with that. Okay. And there is a difference there between the Harrison case and the Massenburg case, actually. If one takes that – I don't want to belabor that point. I was just asking about that. I understand. Let's focus on the objective standard. Yes, sir. Tell me why it would be irrational for somebody to reject this plea knowing what he knows now. Why would that make it objectively irrational or unreasonable for somebody to want to reject this? Because of the strong evidence that was at play, as Your Honors mentioned earlier, also because he received the benefit I mentioned earlier in terms of the three-level reduction. So there's something – How did the rifle get involved in this case? I can't put my hands on the facts right now. Is there some evidence that he and his cousin agreed to do the robbery? Was he there when the gun was bought? I don't have the answer to that, Your Honor. I'm sorry. Okay. Additionally, it's worth noting that the plea agreement had an opportunity for cooperation, and it required the government to make the defendant's cooperation known to the court at sentencing. Now, the defendant didn't get a 5K at the end of the day, but it did provide him with an opportunity, and ultimately the court was provided with some information in the sense that he was debriefed and he provided information. And the point of that is what? It simply – Did he help himself? No. Did he could have helped himself? Is that your point? Yes, Your Honor. We're simply making the point that the opportunity to benefit himself was there. There was a benefit, a potential benefit, at the lease. Was that the major benefit of the plea agreement, that he could have helped himself? No, Your Honor. I'd say the major benefit he got was the three-level reduction for acceptance. I would say that was the most important thing he got. Did the plea speak to any kind of departure other than a potential cooperation? Did it preclude upward departures? It did not. If I could turn to the defendant's second and third Strickland claims. His second claim alleges that counsel was ineffective for failing to object at the sentencing hearing or move to withdraw his guilty plea at the sentencing hearing. We discussed the more factors in our brief. We think the more factors overall would have weighed against a motion to withdraw the guilty plea. In addition to the factors we discussed in our brief, there's also one of the more factors is whether the defendant has credibly asserted his legal innocence. Although the defendant has mentioned this idea of contesting his knowledge of the rifle, I don't believe he's seriously contested his innocence at any point in this stage. The third point I'll address is the appeal issue. And the defendant there alleges that counsel should have raised this Rule 11 issue. Again, I'll move to the prejudice prong on that. If counsel had raised the Rule 11 issue on appeal under this record, it would have been reviewed for plain error because no objections were raised. And this court on direct review looked at the Rule 11 on plain error. And so we think because of that, it's reasonable to conclude that there's not a reasonable probability that the defendant would have succeeded on that claim. If the court disagrees with our arguments as to any of these claims, we would ask that this matter be remanded for an evidentiary hearing. And if the court has no further questions, we ask that... Why do you seek that relief instead of vacation of the plea agreement? We would... I mean, the district court will basically, the evidentiary hearing would be what? To review prejudice? Yes, Your Honor. I think so. And so the district court comes back and says he was prejudiced, and we're back up here again, right? If the court... Well, I guess it's a possible outcome, certainly. We would want to... Or he was not prejudiced, and we'd be back up here. That's possible too. But we would ask for the evidentiary hearing, Your Honor. We ask the court to affirm the judgment of the district court. Thank you. All right. Mr. Smith? Three brief points on rebuttal, Your Honor. First, nowhere in the record is there any evidence that an upward departure would have been applied in the case at hand. Additionally, you got... The government emphasizes the fact that you got a reduction for acceptance of responsibility, which was not insubstantial. Yes, Your Honor. But under that three... Before that three-year, whenever I talked about the guideline or the maximum guideline range, I was contemplating that that three-year didn't apply. I actually contemplated the level 27. If you look to the level 24, what he would have received, it would be between four years and three months, and five years and three months. There were three possible outcomes if Mr. Santiago had gone to trial on count three, and that's either he gets acquitted on it, he gets the five-year without the brandishment, in which case he could go up to five years and three months, or he gets the seven years, and he likely gets the seven-year minimum because his guideline range actually falls below that, assuming that it stays at a 24. His guideline range falls below it. I thought the mandatory minimum was the guideline range for that count. If he took it to trial, the guideline maximum is a seven-year and three-month. Sorry, his guideline range is seven years and three months. The statutory minimum is seven months. Seven years. Seven years, sorry, Your Honor. Additionally, Ms. Santiago didn't know during the Rule 11 colloquy and after his counsel discussed with him the advice beforehand that he was facing a five-year minimum sentence. The court said he was facing up to five years, and his counsel hadn't, according to his affidavit... Yeah, but that wasn't in the plea agreement, though, was it? No, Your Honor, it is not. So one thing about that, he knew what was right before he went in front of the judge, and the judge did commit an error or misspeak or whatever, but he knew certainly up to that point that everybody was operating on a five-year mandatory minimum, not maximum. Isn't that correct? He contends that his counsel... Ms. Santiago, isn't that correct? No, Your Honor, the record is in dispute on that matter. His affidavit says... What does the plea agreement say? The plea agreement says five years, Your Honor. Mandatory minimum. Yes, Your Honor. Again, though, it doesn't contemplate the seven-year minimum for... No, I know, but you just said... You were making the point that the judge said five-year maximum when it's five-year minimum. Yes. But I was just asking, isn't it true that everything before then was a... Everybody was understanding it was a five-year mandatory minimum. Yes. Isn't that correct? Yes, Your Honor. Okay. But again, that five-year mandatory minimum didn't contemplate the two-year enhancement for brandishing. So he thought that he was going to get a five-year... Yes, but the question was whether you were making an argument about the district court's statement up to five years. And that was... The question was, wasn't that just a misspeak that didn't mislead anybody? No, Your Honor, I think it did mislead somebody. Again... Well, the five years is a different issue. But if everybody was with the understanding at that point that the minimum was five years, that's what he was told in the initial proceeding. That's what his plea agreement said. And that's what they basically talked about at the pre-sentence report except for this one statement. And I think the only point of the question is that one statement didn't contribute much to prejudice or error, did it? Yes, Your Honor. According to Godoy, defendants have a right to rely on what the district court tells them. For these reasons, we ask the court to vacate. Thank you. All right. I notice, Mr. Rosenberg, you are court appointed. And I just want to recognize your service to the court. Of course, it's an important service and Mr. Smith's contribution in this regard. We'll come down and greet counsel, but adjourn court first to reconstitute.
judges: Paul V. Niemeyer, Dennis W. Shedd, M. Hannah Lauck